JOHNSON *v.* SHY.

Opinion delivered January 29, 1923.

BILLS AND NOTES—INNOCENT PURCHASER.—In a suit by an indorsee of a note, evidence *held* suffiicient to support a finding that the note was purchased by the indorsee with knowledge that it was procured from the makers through fraud and deceit and without consideration.

Appeal from Lonoke Chancery Court; *J. E. Martineau,* Chancellor; affirmed.

*James B. Reed, Lewis Rhoton* and *Robt. L. Rogers,* for appellant.

Appellant is by the record shown to be an innocent purchaser for value before maturity, and is entitled to recover. The equities are on appellant's side, and appellees, not he, should suffer. 49 Ark. 214, and authorities cited.

*Trimble & Trimble,* for appellees.

It is obvious from the facts and circumstances in evidence that the corporation whose stock appellant was selling was a bogus concern, the object of which was to sell stock through fraudulent misrepresentations and deceit, and that appellant knew this to be a fact. He cannot recover as an innocent and *bona fide* purchaser. 8 C. J. 1147; 230 Pa. 106, 107; 55 Tex. Civ. App. 144, 146; 118 S. W. 785; 26 Neb. 345, 352; 87 S. W. 740, 743, 6 Tex. Civ. App. 633, 638.

One cannot be a *bona fide* purchaser who has brought to his attention facts which should have put him on an inquiry, which, if pursued with due diligence, would lead to actual notice of some conflicting interest in the property. 76 Kan. 764, 765; 75 Minn. 542, 546, 78 N. W. 1; 15 N. Y. 354, 362

HUMPHREYS, J. This suit was instituted in the circuit court of Lonoke County by appellant against appellees to recover $750 and interest upon a note in said sum, executed by appellees to themselves and transferred to the Industrial Transportation Company, a corporation, for stock in the concern. It was alleged that the note was given for a valuable consideration, and was sold to and purchased by appellant for a valuable consideration, before maturity.

Appellees filed an answer admitting the execution of the note, but denying that it was given for a valuable consideration, and that the plaintiff purchased it before maturity for a valuable consideration, in good faith, and without notice of their equities. They also alleged that the note was without consideration, and was procured through fraud and deceit, in which appellant participated. They also alleged that the note had been annulled, and its collection enjoined, by the chancery court, in a suit wherein appellees and others were petitioners and said Industrial Transportation Company was respondent.

By agreement of the parties, the cause was transferred to the Lonoke Chancery Court, where it was heard

upon the pleadings, and oral and documentary evidence, which resulted in a decree dismissing appellant's bill with prejudice.

The cause is before this court upon appeal for trial *de novo.*

The Industrial Transportation Company, a Washington, D. C., corporation, established an office in Little Rock for the purpose of selling its preferred and common stock. Its plan was to sell a certain amount of stock in a town or city, and to build and operate a general store for the purpose of selling goods to its stockholders cheaper than they could purchase them elsewhere. The company employed a number of agents to sell stock, paying them a commission of fifteen or twenty per cent. The stock was sold at par for one-half cash and one-half on time, evidenced by promissory notes. The stock was to be delivered when the notes were paid. Appellant came to Arkansas from South Dakota, and was employed by the company in February, 1920. For the first few months he accompanied the other agents on stock selling tours. In April he began to sell stock, and made his first sale to appellees. He sold stock to the amount of $10,000 the first three months, and continued to work as a stock salesman until the following December. During the time he visited the offices every week or two and conversed and consulted with the officers of the company. Occasionally he sold on credit entirely, and took two notes in payment; one to the company for one-half the amount, and one to himself for the balance. When he did this, he sent the company its note and cash in lieu of the note executed to himself. When he quit working for the company, he had notes in about the sum of $3,000 which he had obtained in this way. The $750 note in question was the only one he ever purchased from the company. He testified that he gave $735 for it in adjusting his commission and account; that he never knew of the company ever selling any other note at a discount; that he bought the note from Gamble, the vice-president of the company.

who turned it over to Austin Hart to be used in settlement of commissions which the company owed him; that the company owed him about $2,300, all of which it would have paid him in cash had he not bought the note.

A copy of the note carrying the following indorsement was attached to the complaint:

"Pay to the order of Melvin Johnson, without recourse.

"Industrial Transportation Company,

"By ————————————

"Treasurer."

The note was introduced in testimony, and the name of Austin Hart appeared on the blank line after "By" and before "Treasurer." Appellant testified that he did not know when Austin Hart signed his name to the indorsement. He also testified that he sold appellees $1,000 of the stock, but not the particular stock for which the note in question was executed; that he represented the company to be solvent and prosperous, stating, in explanation, that he thought it was, and that, as far as he knew, he was telling the truth. He denied, on cross-examination, that he represented to the Shys and other stock purchasers that he had personal knowledge, or a knowledge from an examination of the records and books, that the company had a surplus, or sinking fund, to pay 8 per cent. interest on all stock all the time, and ample funds to maintain the stores; but that he stated the books of the company were subject to audit by the United States Government once a year. He also stated that he discovered the failing condition of the company in December, and quit working for them; that at that time he had in his possession $4,000 in notes which he had taken for stock in Texas, that he turned back to subscribing stockholders.

S. L. Shy, one of the appellees, testified in part as follows: "Q. This is a suit on a note for $750 for stock you bought; are you acquainted with the plaintiff? A.

Yes. Q. Who influenced you to buy this stock? A. Johnson. Q. What representations did he make to you? A. He stated that they would at all times keep a full stock of goods in the store; that they had a charter from the government, and it was under government control, and the company would investigate the books every thirty days, and the government would audit the books once a year, and the company would audit the books every thirty days, and that the stock would pay eight per cent. all the time. Q. Did he represent that he would guarantee that would be done, or that was his understanding? A. He said it was positive. Q. Did he say anything at all about paying eight per cent. interest? A. He said you could buy all the stock you wanted, and that the company would pay eight per cent. interest on all stock. Q. Did he say there was any surplus or sinking fund for that purpose? A. Yes, he said the money was already made; they had that before. Q. Did he state that as facts? A. Yes. Q. And that he knew about it? A. Yes. Q. He said he knew about it? A. He said he had examined the records and books to find out.''

He also testified that, while he did not buy the stock for which the note was given, directly from appellant, it was purchased on account of representations made by appellant when he first sold him stock; that when he purchased this stock at the office he treated it as appellant's sale, and told them to allow appellant the commission on it.

It was agreed by counsel for the respective parties that Mrs. Neeson, Mr. Sanders, and other witnesses for appellees would testify to substantially the same representations made by appellant to them, when selling them stock, as Shy testified were made to him by appellant.

The decree of the chancery court of Lonoke County, of date February 17, 1921, in which appellees and others were petitioners and the Industrial Transportation Company was respondent, was introduced showing that the

note in question, as well as many others which had been executed for stock in said company, had been annulled for the want of consideration, and because procured through fraudulent misrepresentations.

Appellant contends that the decree is contrary to a preponderance of the evidence. He contends that the note was without consideration as between appellees and the Industrial Transportation Company, but contends that the record reflects, by a preponderance of the evidence, that he was an innocent purchaser of the note before maturity, for value. We cannot agree with him in this contention. The record reflects facts and circumstances sufficient to have put a man of ordinary prudence and caution upon inquiry, which, if followed up, would have revealed the fraudulent intent in selling its stock. This particular note was selected at random from a large number and sold, contrary to custom, at a discount. It was inferable from the evidence that the instrument was signed by Hart after the suit was instituted. The note was purchased by appellant with a knowledge that the stock, for which it had been given, had not been delivered, and without seeing to it that same was delivered. The whole testimony tends to show a very close relationship between the officers of the company and appellant. The weight of the testimony warranted a conclusion that appellant wilfully misrepresented the financial condition of the company in order to sell its stock.

The finding and conclusion of the court that the note was obtained by appellant with a knowledge that it was procured through fraud and deceit, and without consideration, is supported by the decided weight of the testimony.

The decree is therefore affirmed.